THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. CHARLES D. SPEARS, Defendant-Appellant.

Second District   No. 2—90—0244

Opinion filed November 15, 1991.

G. Joseph Weller and David W. Devinger, both of State Appellate Defender's Office, of Elgin, and David S. Morris, of Chicago, for appellant.

Paul A. Logli, State's Attorney, of Rockford (William L. Browers and Cynthia N. Schneider, both of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE BOWMAN delivered the opinion of the court:

Defendant, Charles Spears, was convicted of attempted first degree murder (Ill. Rev. Stat. 1989, ch. 38, pars. 8—4(a), 9—1(a)(1)) and was sentenced to a term of 20 years' imprisonment. He appeals his sentence, contending that the trial court relied on erroneous information in the presentence report, that the trial court relied on the threat of physical harm as an aggravating factor when it was implicit in the offense, and that the sentence exceeded those of similarly placed offenders.

At the trial, the State presented evidence which showed that on September 4, 1989, defendant had fired at least two gunshots at the victim, Corey Bolden. Bolden was fighting defendant's half-brother, Patrick Coleman, when he saw defendant run up with a gun. Bolden tried to run into his house. Defendant yelled out to Coleman to hold Bolden, but Coleman stood out of the way. Defendant fired several shots with his handgun. The police found several waist-high holes caused by .32 caliber bullets in the Bolden home. The jury found defendant guilty of attempted murder.

At the sentencing hearing, the trial court asked the parties if they had reviewed the presentence investigation report. Defense counsel objected to several items in it as follows:

"MR. CANFIELD [defense attorney]: I just received it about one minute ago. There are some things that I would call to the attention of the Court in the presentence report that my client does not agree with. I've had him read it as to its content and he objects to portions of it.

THE COURT: All right. Do you want to put those on the record for me?

MR. CANFIELD: Yes.

On page 4 of the presentence report, in about the middle of the first paragraph, he objects to the portion which says as follows.

'the victim and the group of persons he was with were asked whether they were Disciples—that is, Disciple gang mem-

bers. And when John Catlin responded that he was not a gang member, and not a Disciple, the defendant hit him in the face and knocked him to the ground. A scuffle ensued and the victim ran away from the defendant when he saw the defendant pull out a gun.'

My client says that is not a correct statement of fact.

THE COURT: Who is the probation officer on this?

MR. WEINHARDT [assistant State's Attorney]: Mr. Laurberg prepared the presentence investigation, Your Honor.

THE COURT: Do you have any comment on that?

MR. WEINHARDT: Well, I don't know what the defendant's alternative version of the facts would be, Your Honor. I do know that that case was resolved by a guilty plea and that at the guilty plea, the State's Attorney provided a statement of facts to the judge. And it's my understanding that the statement of facts that was taken for this statement was taken from the pen statement that was written by our office when the defendant was committed on that offense. And that the pen statement is substantially the same thing that the State's Attorney tells the judge at the time a factual basis for the plea is taken.

\* \* \*

THE COURT: It will stand over his objection. Record may reflect his objection.

\* \* \*

MR. CANFIELD: And on page 7, next to the last paragraph, he has objected to the following statement.

'The minor received three suspensions since his re-enrollment. The minor was suspended on February 26, 1985 for three days for extortion. A teacher observed him threatening another student for three dollars.'

He denies that that ever occurred.

THE COURT: Record may reflect denial. Do you have any comment?

MR. WEINHARDT: I have no comment about that, Your Honor.

THE COURT: It will stand in the presentence as taken from a presentence in juvenile court.

MR. CANFIELD: And he objects to the statement on paragraph 8, in the first paragraph,

'The minor was suspended for five days on March 18, 1985. A teacher observed the minor shoving another student

who was reportedly a member of a rival gang. When a teacher intervened, the minor became overly abusive and had to be physically escorted to the office.'

He objects to that as not being the fact.

THE COURT: Comment?

MR. WEINHARDT: I have no comment about that, Your Honor.

THE COURT: It will stand over objection."

After the court denied these objections, defendant testified regarding the factors in mitigation. Regarding the shooting incident described in the report, defendant explained that he was only 16 years old on that day, May 10, 1987. As he was leaving a house, someone shouted, "Chuckie, watch your back." Defendant turned to see Catlin running at him with a bat. He kept coming, and defendant fired shots at him. Defendant pleaded guilty to the offense of aggravated battery. Defendant did not know why Catlin charged at him, but defendant left the scene because he was still on parole.

After the other mitigation testimony, the trial court summarized the purposes of the Unified Code of Corrections. It then stated:

"Factors in aggravation. As it turned out, Corey Bolden was not injured. Was certainly a threat of serious harm. And that's included in the offense of attempted murder so I don't consider that other than as part of the offense.

As to the offense itself, two shots fired at Corey Bolden. Fortunately, he was not hit. It was not because of any lack of efforts on the part of the defendant. I'd say Corey Bolden was a very fortunate young man."

The trial court also referred to defendant's prior record:

"A shooting. According to the information in the presentence [report], that victim was running away from defendant, also.

Talks about the—well, the actual presentence [report] indicates that when John Catlin was found not to be a gang member, the defendant hit him in the face and knocked him to the ground. And there was a scuffle and the victim ran when he saw the defendant pull out a gun. The defendant then discharged the gun four times, hit the victim in the leg.

I heard defense counsel mention that defendant lives in an area where many people carry a gun for self-defense, protect themselves. This is not—was not a gun used for self protection but for offense. In both instances. And the jury has made the decision in the case at bar."

The trial court also stated:

"Mitigation. I've already commented on the threat of serious harm with the use of a weapon. The Court would find that the defendant did contemplate that his criminal conduct would cause or threaten serious physical harm. The defendant did not act under strong provocation. There are not substantial grounds tending to excuse or justify the defendant's criminal conduct. The defendant's criminal conduct was not induced or facilitated by someone other than the defendant."

The trial court, considering defendant's past record, found that the criminal conduct was likely to recur. The court stated it was considering the factors of rehabilitation, punishment, protection of the public, and the fact that defendant testified he was provoked by Catlin in the previous incident. However, regarding the case at bar, the court accepted the State's interpretation of the facts, that defendant committed the offense as revenge concerning a girlfriend, and rejected defendant's explanation that he was trying to protect his brother. Defendant had fired more than one shot at a man running for his life into a house. Defendant committed the offense only 36 days after he was placed on mandatory supervised release in July 1989. The court found defendant prone to violence, which he expressed twice with a gun. The public needed protection. The court sentenced defendant to 20 years' imprisonment.

On appeal, defendant contends the trial court erred in overruling his objections to the presentence report and relying upon unreliable information when imposing the sentence. According to defendant, the trial court specifically mentioned the Catlin incident three times during sentencing, but no factual basis appears in the record to support the prosecutor's understanding regarding the origin of the narrative. Also, he maintains the State never showed that the statement was in fact presented at the time defendant pleaded guilty to the previous aggravated battery. Defendant further argues that even if the statement had been read, there was no showing that defendant had not objected to the statement at that time. In addition, he asserts the sources of the other information to which defendant objected were not identified. In *People v. Washington* (1984), 127 Ill. App. 3d 365, the sentence was reversed because the presentence investigator repeated an allegation from an unnamed source that the defendant was a member of the Black Gangster Disciples street gang. There was no showing of any reliability of the information or the informant, and the trial court noted a duty to protect the public from gangsters; since the trial court in fact relied upon unreliable information, the sentence was reversed. 127 Ill. App. 3d at 386-87.

A trial court conducting a sentencing hearing may consider evidence of other criminal conduct, absent a conviction thereon, provided the evidence is relevant and reliable. (*People v. Jackson* (1990), 200 Ill. App. 3d 92, 98.) The trial judge must be cautious in admitting such proof and be sensitive to the possibilities of prejudice if such information is inaccurate, but the evidence is still admissible. (*People v. La Pointe* (1981), 88 Ill. 2d 482, 499; *Jackson*, 200 Ill. App. 3d at 98.) Section 5—3—1 of the Unified Code of Corrections (Code) (Ill. Rev. Stat. 1989, ch. 38, par. 1005—3—1) provides that no felon shall be sentenced before the preparation of the presentence report. At the hearing, the trial court must consider the evidence received at trial, the presentence report, any evidence offered in mitigation and aggravation, the arguments and the allocution. Ill. Rev. Stat. 1989, ch. 38, par. 1005—4—1(a).

At least one court has ruled, based on the above statutes:

"[T]hat *all* information appearing in a presentence report may be relied upon by the sentencing judge to the extent the judge finds the information probative and reliable. ***

To the extent that either the defendant or the State may believe that the presentence report contains inaccuracies, we hold that they have the burden to call any such inaccuracy to the court's attention at the start of the sentencing hearing ***." (Emphasis in original.) *People v. Powell* (1990), 199 Ill. App. 3d 291, 294-95.

■ Although the State raises the initial claim of waiver to defendant's argument, we find that defendant properly objected to the alleged inaccuracies in the report at the start of the sentencing hearing. (*Powell*, 199 Ill. App. 3d at 295.) The facts are similar to those of *People v. Wright* (1987), 161 Ill. App. 3d 967, in which this court stated:

"Defendant maintains that evidence of a prior shooting incident should not have been admitted at his sentencing hearing. We note at the outset that the State asserts that defendant has waived this issue since he did not object at the hearing to the testimony adduced from the victims of the prior shooting incident. However, defendant did object to the admission of his written statement regarding his involvement in the shooting and to the admission of the written statement of one of the victims of the incident. We believe these objections were sufficient to preserve the issue for appellate review." 161 Ill. App. 3d at 976.

A sentencing judge has wide latitude in his discretionary determination of the types and kind and extent of punishment to be imposed within the statutory limits. (*People v. Foster* (1987), 119 Ill. 2d 69, 96; *People v. Tigner* (1990), 194 Ill. App. 3d 600, 607.) The only requirement for admission is that the evidence be reliable and relevant, and this is a decision left to the discretion of the trial court. Evidence of other crimes with which the defendant has been charged, but not convicted, is admissible when the testimony is trustworthy and subject to cross-examination. The formal rules of evidence are relaxed to provide the judge with a wide range of information regarding the defendant's life, character, criminal history and propensity to continue to commit other crimes. Even hearsay evidence is not *per se* inadmissible; a hearsay objection affects the weight rather than the admissibility of the evidence, but double hearsay should be corroborated, at least in part, by other evidence. *Tigner*, 194 Ill. App. 3d at 607.

Defendant contends that while the disputed evidence may be relevant, it was unreliable and inadmissible. The court in *Wright* addressed a similar concern:

"The testimony regarding defendant's conduct in relation to the prior shooting incident was relevant to a determination of a proper sentence in that it bore upon defendant's natural inclination or aversion to commit crime; defendant had the opportunity to face and cross-examine the witnesses involved in the prior incident; and the accuracy of the information was not challenged at the sentencing hearing. (See *People v. La Pointe* (1981), 88 Ill. 2d 482, 498-99, 431 N.E.2d 344.) In this court defendant relies on the discrepancies between his statement regarding the shooting incident and the testimony presented at the sentencing hearing to conclude that the evidence of the shooting offense was unreliable and should have been excluded. Our review of the testimony concerning the prior shooting does not support defendant's conclusion. Although discrepancies exist, the testimony considered as a whole is not so suspect as to render it inadmissible." *Wright*, 161 Ill. App. 3d at 977.

In *Wright*, we held that even if the testimony were inadmissible, its admission was harmless error. We cannot come to the same conclusion here. In *Wright*, the brutality of the charged crime alone justified life imprisonment; thus, the admission of the evidence concerning a prior shooting was harmless. (161 Ill. App. 3d at 978.) In the cause before the court, defendant was eligible for a 6- to 30-year term of incarceration and received a 20-year term of imprisonment. In *Wright*, the source of the information was known and subject to cross-

examination. Here, as in *Washington*, the source of the information concerning the Catlin incident was not known; the item is double or triple hearsay repeated from a partisan interpretation of the facts of the incident. While even under defendant's version of the facts the Catlin incident revealed he was prone to using unreasonable force and deadly weapons, the trial court heavily relied upon the disputed fact that Catlin was running away from defendant rather than toward him. Although the facts do not involve a disputed conviction, but rather a mitigating circumstance, the fact in issue was specifically relied upon by the trial court to determine defendant's character and the likelihood the offense could recur. Thus, we do not consider the trial court's consideration of the disputed fact to have been harmless, and we must remand the cause for a new hearing.

In his second argument, defendant contends that the trial court improperly considered the threat of harm to the victim when such threat is an element of the offense. In *People v. Conover* (1981), 84 Ill. 2d 400, 405, and *People v. Saldivar* (1986), 113 Ill. 2d 256, 272, our supreme court held that the legislature has already considered the threat of harm to the victim when it classified an offense into a class of felony. Each class of felony has its own sentencing range; thus, a court may not consider as an aggravating factor any factor which is implicit in the crime being punished. In *People v. Martin* (1988), 119 Ill. 2d 453, 460, our supreme court allowed the defendant to raise a *Saldivar*-type claim without requiring trial counsel to interrupt the sentencing judge to register an objection.

■ Defendant acknowledges that the trial court stated the *Saldivar* rule correctly when it listed the aggravating factors but argues that the trial court erred when it repeated the factors, without the *Saldivar* admonition, during the discussion of mitigation. We do not believe the error, if it occurred, was serious enough to prejudice defendant. The relevant remarks in mitigation were brief, as if the trial court were applying a checklist. This court has stated that it is preferable for a trial judge to discuss fully the statutory factors in aggravation and mitigation (*People v. Bergman* (1984), 121 Ill. App. 3d 100, 110, citing Ill. Rev. Stat. 1979, ch. 38, pars. 1005—5—3.1, 1005—5—3.2), and we cannot fault the trial court for checking each of the factors which might apply to this defendant. The trial court was merely stating which statutory factors did not apply and did not commit error.

■ Defendant also contends that the trial court, while giving "lip service" to the *Saldivar* rule, considered the improper aggravating circumstance of threat of harm to the victim anyway. A trial court has

great discretion to fashion a sentence appropriate to the crime. (*People v. La Pointe* (1981), 88 Ill. 2d 482, 492.) We will presume that the trial court, having articulated a rule, would consider it in its sentencing determination. (See *People v. Ulmer* (1987), 158 Ill. App. 3d 148, 151.) In any event, as we must remand the cause for resentencing, the trial court is on further notice to apply the rule stated in *Saldivar* and to focus on the avoidance of ambiguity in expressing the factors relied upon in determining an appropriate sentence.

Finally, defendant contends that he has proved the trial court applied improper factors because the 20-year sentence was excessive when compared to those of others convicted of attempted murder. Defendant notes that his young age of 20 years, his broken home and his substance abuse may have contributed to his problems. He did obtain a GED, a new job and letters of recommendation. Defendant cites statistics that show that for the first two years the first degree murder statute was in effect, the mean sentence for attempted first degree murder was 15.3 and 12.6 years' imprisonment. (*Statistical Presentation 1989*, Illinois Department of Corrections, Springfield, Ill., at 57 (April 1989).) Median sentences of 12.0 and 10.0 years' imprisonment indicate that the means were not skewed by aberrantly high or low sentences for those years. (*Statistical Presentation*, at 57.) Sentences under the repealed attempted murder statute, for each year from 1983 to 1989, similarly show no mean exceeded 13.5 and no median exceeded 10.2. (*Statistical Presentation*, at 57.) We accept these figures from defendant's brief for the sake of the argument.

■ The State responds that a bare comparison of statistics is insufficient to show an excessive sentence. By definition, half of all sentences will exceed the median, and a mean is produced only by considering all elements in the sample. In a normal distribution, half of all elements will exceed the mean. The fact that one particular sentence exceeds the mean for all sentences is meaningless, without more, to show that the sentence is excessive. As the State notes, each time a court sentences an offender, it must consider personal factors. Many of those sentences comprising the mean were for offenders who had no history of violence, or who were provoked by circumstances insufficient to constitute a defense to a crime, or who acted in situations unlikely to recur. We cannot speculate on how defendant's 20-year term relates to the others without a basis to distinguish the factors personal to each offender. The only factor defendant specifically mentions is age, but the day is long past when this court should quiver like a "pole-axed blancmange" at the mention of youth and rehabilitation. (*People v. West* (1977), 54 Ill. App. 3d 903, 909.) These factors are

proper considerations in the fixing of sentences, but they are not the sole factors. Severe sentences can be appropriate for youths who intend to kill. 54 Ill. App. 3d at 909-10.

For the above reasons, the defendant's conviction is affirmed. The sentence imposed by the trial court is vacated, and the cause is remanded to the trial court for a new sentencing hearing.

Affirmed in part; vacated in part and remanded.

GEIGER and UNVERZAGT, JJ., concur.