THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. WALTER BLANCK, Defendant-Appellant.

Second District    No. 2—92—0432

Opinion filed June 14, 1994.

G. Joseph Weller, Ingrid L. Moller, and Thomas A. Lilien, all of State Appellate Defender's Office, of Elgin, for appellant.

Gary W. Pack, State's Attorney, of Woodstock (William L. Browers and Cynthia N. Schneider, both of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE QUETSCH delivered the opinion of the court:

Following a jury trial in the circuit court of McHenry County, defendant, Walter Blanck, was convicted of aggravated kidnaping (Ill. Rev. Stat. 1989, ch. 38, par. 10—2(a)(5) (now 720 ILCS 5/10—2(a)(5) (West 1992))) and aggravated criminal sexual assault (Ill. Rev. Stat. 1989, ch. 38, par. 12—14(a)(2) (now 720 ILCS 5/12—14(a)(2) (West 1992))). Defendant was sentenced to a term of imprisonment of 13 years for aggravated kidnaping to be served consecutively to an extended-term sentence of 60 years' imprisonment for aggravated criminal sexual assault. Defendant raises the following issues on appeal: (1) whether the State failed to prove beyond reasonable doubt that the offense of aggravated criminal sexual assault was committed wholly or partly within the State of Illinois; (2) whether the jury received improper instructions on the burden of proof of jurisdiction and the definition of a continuing offense; (3) whether his motion for substitution of judges was improperly denied; and (4) whether his 60-year, extended-term sentence for aggravated criminal sexual assault was an abuse of discretion.

The complainant, A.H., testified at trial that she had met defendant in December 1989, through a mutual acquaintance, Danny Pietrowski. A.H. saw defendant again at a New Year's Eve party and dated defendant on one occasion in January or February 1990. On their date, after they had a few drinks at a bar in Milwaukee, Wisconsin, defendant took A.H. to a motel room where they had a few more drinks and used cocaine. At some point, A.H. asked to be taken home, but defendant said that he suffered from night blindness and could not drive. A.H. remained in the motel room, and throughout the night defendant kept trying to touch her. A.H. testified that she finally agreed to have sexual intercourse with defendant so he would take her home.

Aside from three or four telephone conversations initiated by defendant, A.H. had no further contact with defendant until October 3, 1990, the date of the incidents giving rise to this prosecution. On October 3, A.H. was living in a house in Milwaukee, Wisconsin, with her father and her boyfriend, Brian. At about 12:30 p.m. defendant and his one-year-old daughter unexpectedly visited the house. A.H. and Brian were in the house at the time, but Brian left shortly thereafter. While at A.H.'s house, defendant made some telephone calls in an effort to find a baby-sitter for his daughter. He indicated that he had a business meeting in downtown Milwaukee. At around 2 p.m., defendant left A.H.'s house, stating that he was taking his daughter to a baby-sitter in Illinois. The baby-sitter, a resident of Hebron, Illinois, testified that defendant arrived at her home with his daughter at around 3:30 or 4 p.m.

At about 5:50 p.m., defendant telephoned A.H. and asked her to go out with him, but A.H. declined. At about 6:40 p.m., defendant came to A.H.'s house and indicated that he still wanted A.H. to go out for a drink with him. A.H. declined, but asked defendant to take her out to purchase cigarettes. Despite what had transpired during their date earlier that year, A.H. thought that going for a pack of cigarettes would be harmless. After driving to a convenience store, defendant stated that he had to go to a friend's residence in Mukwonago to drop off some money. At about 7:15 p.m., as they were driving on Route 164, defendant stopped the car and asked A.H. to help him put a suitcase (which he claimed was filled with money to be laundered) in the trunk. When A.H. stepped out of the car, defendant ordered her to get into the trunk. A struggle ensued, and defendant punched A.H. in the face and threw her into the trunk.

Defendant ordered A.H. to remove her clothing. He stopped the car two or three times, and during each stop A.H. handed defendant one or more items of clothing. At some point, defendant told A.H. that "the Outlaws" and Danny Pietrowski had paid him to kill her. After A.H. was completely undressed defendant told her that they were at the Outlaws' clubhouse and they had to see that she was dead. A.H. was familiar with the location of the Outlaws' clubhouse in Milwaukee and knew that she was not at that location. Defendant proceeded to wrap electrical or duct tape around A.H.'s head, covering her entire face, including her mouth and eyes. Defendant then bound A.H.'s wrists behind her back with tape. Defendant resumed driving, making several more stops. During one or more stops, defendant placed a baseball bat in A.H.'s vagina and pushed on it. Defendant told A.H. that she was making him mad because she was not "getting wet" or having an orgasm, and threatened to kill her if she did not do so. Defendant also urinated on A.H., poured beer on her, pulled on her breasts, and pulled her pubic hair out. While wrapping A.H. with tape, defendant accidentally cut his wrist with the knife he was using to cut the tape and smeared blood from the cut on A.H.'s body. During one of the stops, defendant ordered A.H. to insert her own fingers into her vagina or anus. Throughout the period of confinement, defendant called A.H. a "f_____ bitch" or a "f_____ whore" and said that she was "f_____ with him and lying to him."

At 12:40 a.m. on October 4, a Spring Grove police officer stopped defendant's vehicle, which was travelling west, on Route 173 at a point just west of Winn Road in McHenry County. The police officer had observed the vehicle weaving and crossing the center line. When he approached the vehicle, the police officer heard screams for help

coming from the trunk. That officer and a McHenry County deputy sheriff who joined him released A.H. from the trunk.

A.H. suffered scattered bruises and abrasions to her face and chest and reported tenderness in her vaginal area. One of A.H.'s shoes and her schedule of classes at Milwaukee Area Technical College were discovered by detectives with the sheriff's department of Waukesha County, Wisconsin, on the shoulder of Route 164, at a location in Waukesha County approximately a quarter mile north of the Racine County line.

Defendant first contends that the evidence presented at trial is insufficient to establish jurisdiction in Illinois over the charged offense of aggravated criminal sexual assault and his conviction for that offense must therefore be reversed. Illinois jurisdiction over criminal offenses is delimited by section 1—5 of the Criminal Code of 1961, which provides, in pertinent part:

"(a) A person is subject to prosecution in this State for an offense *** if:

(1) The offense is committed either wholly or partly within the State; ***

* * *

(b) An offense is committed partly within this State, if either the conduct which is an element of the offense, or the result which is such an element, occurs within the State." (Ill. Rev. Stat. 1989, ch. 38, par. 1—5 (now 720 ILCS 5/1—5 (West 1992)).)

(See *People v. Holt* (1982), 91 Ill. 2d 480, 484.) Jurisdiction must be proved beyond a reasonable doubt. *Holt*, 91 Ill. 2d at 492; *People v. Sims* (1993), 244 Ill. App. 3d 966, 1004.

Defendant cites *People v. Holt* (1982), 91 Ill. 2d 480, in support of his argument that jurisdiction is lacking in the case at bar. In *Holt*, the defendant kidnaped the victim in Illinois and drove her to Wisconsin where he raped and killed her. The defendant was convicted in Illinois of aggravated kidnaping and murder under the felony-murder rule. On appeal, the State argued that the kidnaping was an element of the murder as charged under the felony-murder rule and the occurrence of the kidnaping in Illinois therefore conferred jurisdiction over the murder charge. Our supreme court disagreed, holding that pursuant to section 1—5 of the Criminal Code as then in effect (Ill. Rev. Stat. 1979, ch. 38, par. 1—5), the kidnaping in Illinois could not support jurisdiction in Illinois over the felony-murder charge, at least under circumstances where the killing outside the State was not done in furtherance of the kidnaping and

was not "otherwise a danger inherent in the felony, so that one could say realistically that the felony caused the death." 91 Ill. 2d at 486.[1]

The defendant in *Holt* was not charged in Illinois with rape, and although much of the reasoning in *Holt* relates to somewhat unique attributes of the felony-murder rule and may not be directly applicable in other contexts, defendant relies on the following passage from the opinion:

> "[I]t is not enough that some part of a course of criminal conduct, some related crime, be committed in Illinois; the particular crime charged must be committed partly within this State. *That is why under Illinois law Illinois cannot try Holt for rape or ordinary murder. He committed those crimes entirely in Wisconsin, though following a kidnaping that began in Illinois.*" (Emphasis added.) (91 Ill. 2d at 484.)

Defendant contends that if a kidnaping initiated in Illinois will not support prosecution of a sexual assault occurring in Wisconsin, a sexual assault occurring in Wisconsin, during a kidnaping in which the victim is taken from Wisconsin to Illinois, cannot be prosecuted in Illinois.

The question of jurisdiction over a rape prosecution was a hypothetical one in *Holt*, and the court's answer in the emphasized language above is *dictum*. We harbor some doubt as to whether our supreme court would reach the same conclusion if actually confronted with the issue hypothetically resolved in *Holt*. A number of decisions in other jurisdictions have held that where the victim of a sex offense was kidnaped in one State and transported to another State where sexual acts took place, the sex offense could be prosecuted in the State where the kidnaping began. (See *Bright v. State* (Del. 1985), 490 A.2d 564; *Smith v. State* (1985), 101 Nev. 167, 697 P.2d 113; *State v. Jones* (1982), 51 Md. App. 321, 443 A.2d 967, *vacated on other grounds* (1984), 298 Md. 634, 471 A.2d 1055; *Leonard v. United States* (5th Cir. 1974), 500 F.2d 673.) Some of these decisions have reasoned that the separate elements of rape may occur over a period of time and in more than one jurisdiction (*Jones*, 51 Md. App. at 329, 443 A.2d at 973), and the use of force element of the sex offense was or included the force employed in the kidnaping in the State of prosecution (see

---

[1]We note that the result would not be the same under current law. Subsequent to *Holt* the legislature amended section 1—5(b) to provide that "In a prosecution pursuant to paragraph (3) of subsection (a) of Section 9—1, the attempt or commission of a forcible felony other than second degree murder within this State is conduct which is an element of the offense for which a person is subject to prosecution in this State." Pub. Act 85—740, eff. January 1, 1988.

*Bright,* 490 A.2d 564; *Jones,* 51 Md. App. 321, 443 A.2d 967; *Leonard,* 500 F.2d 673.)

However, we are aware of no cases holding that where the initial abduction and sexual acts occur in one State, the offender may be tried in another State into which the defendant later transported the victim during the kidnaping. We believe the reasoning of the above decisions does not apply in situations involving that sequence of events. In its argument on a different issue in this appeal, the State suggests that the use of force underlying the charge of criminal sexual assault was, or included, the confinement of A.H. in the trunk of defendant's car (see Ill. Rev. Stat. 1989, ch. 38, par. 12—12(d)(2) (now 720 ILCS 5/12—12(d)(2) (West 1992))) and this confinement continued into Illinois. Therefore, in the State's view, an element of the offense occurred in Illinois, and, correspondingly, the offense occurred "partly" in Illinois. It is true that the completion of an act of sexual penetration is not always a bright line marking the end of a criminal sexual assault for all purposes. (See, *e.g., People v. Colley* (1989), 188 Ill. App. 3d 817, 820 (where the defendant, who was charged with aggravated criminal sexual assault based on the infliction of bodily harm, had stabbed the victim after the act of sexual penetration was complete, the court found that "the stab wounds occurred sufficiently close in time to the sexual acts that they can be said to have been committed during the course of the sexual assault").) Nonetheless, we disagree with the State's position. The definition of criminal sexual assault applicable in the case at bar is the commission of "an act of sexual penetration by the use of force or threat of force." (Ill. Rev. Stat. 1989, ch. 38, par. 12—13(a)(1) (now 720 ILCS 5/12—13(a)(1) (West 1992)).) It is not "force" in the abstract that is an element of the offense of criminal sexual assault; it is the "use of force" specifically to accomplish an act of sexual penetration. Although force consisting of restraint or confinement may continue after sexual penetration, such restraint or confinement is no longer the specific "use of force" contemplated by section 12—13(a)(1). We therefore conclude that the evidence of A.H.'s confinement within Illinois is not itself sufficient to confer jurisdiction if the act or acts of sexual penetration accomplished by means of the confinement were already completed when A.H. was brought into Illinois.

Defendant argues that the evidence here does not establish where any of the conduct constituting the elements of the offense of aggravated criminal sexual assault occurred. The victim was confined within the trunk of defendant's vehicle and was therefore unable to identify the path of travel. Nor did A.H. identify or describe any of the locations where defendant's vehicle stopped during the night.

While A.H.'s testimony undisputedly establishes that defendant committed acts of sexual penetration, the testimony is unclear as to how many acts occurred or during how many stops acts of penetration occurred.

The State does not dispute the need to prove jurisdiction beyond a reasonable doubt, but maintains that circumstantial evidence was sufficient to establish jurisdiction in Illinois. The State is correct that the location of an offense may be proved by circumstantial evidence. (See, *e.g.*, *People v. Glass* (1992), 239 Ill. App. 3d 916, 923-24 (location proved by circumstantial evidence for purpose of establishing venue).) The sufficiency of the evidence, whether direct or circumstantial, is reviewed under the reasonable doubt test set forth in *People v. Collins* (1985), 106 Ill. 2d 237. (*People v. Ward* (1992), 154 Ill. 2d 272, 314; *People v. Pintos* (1989), 133 Ill. 2d 286, 291.) Under *Collins*, the question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the defendant guilty beyond a reasonable doubt. (*Collins*, 106 Ill. 2d at 261.) It has been stated that " '[t]he location of the offense is proved by circumstantial evidence where the only rational conclusion to be drawn from the evidence as a whole is that the offense took place in the county alleged.' " *People v. Glass* (1992), 239 Ill. App. 3d 916, 924, quoting *People v. Ramsey* (1986), 147 Ill. App. 3d 1084, 1089.

Citing *People v. Ramsey* (1986), 147 Ill. App. 3d 1084, the State correctly observes that facts such as the timing and direction of travel can be considered in determining where an offense occurred, but that principle is not helpful in this case. Here, all that is known in this respect is where the abduction of A.H. began, the direction of travel *at that time*, and where the abduction ended nearly 5¹/₂ hours later. Defendant clearly did not follow a direct route to the location in McHenry County where he was apprehended, and there is no way to determine his path of travel. Defendant may have crossed into Illinois shortly after the kidnaping began, or may have entered Illinois only shortly before being stopped by police. Defendant may also have crossed the border more than once. The evidence of time and direction of travel provides no rational basis for a choice among these possibilities.

The State also notes that defendant lived and claimed to own a business in Illinois. The State also notes that at one point during the drive he told A.H. that they were in Kentucky which, according to the State, reflects the mind-set of someone who has driven long distances in Illinois, rather than Wisconsin. We think any inference to be drawn from this comment and the evidence of defendant's ties to Illinois is insufficient to constitute proof beyond a reasonable doubt

that the offense of aggravated criminal sexual assault occurred wholly or partly in Illinois.

■ Reasonable inferences to be drawn from the evidence are the responsibility of the trier of fact, and a criminal conviction will not be set aside on review unless the evidence is so improbable or unsatisfactory that there remains a reasonable doubt of the defendant's guilt. (*People v. Stanciel* (1992), 153 Ill. 2d 218, 235.) The meager circumstantial evidence relative to the location of the offense in question here is so unsatisfactory as to leave a reasonable doubt. We conclude that no rational trier of fact could find beyond a reasonable doubt that the offense of aggravated criminal sexual assault occurred even partly in Illinois. Defendant's conviction of aggravated criminal sexual assault must therefore be reversed.

■ Because of our reversal of defendant's aggravated criminal sexual assault conviction, we believe defendant should be resentenced for his aggravated kidnaping conviction. The trial court imposed an extended-term sentence for aggravated criminal sexual assault, finding the offense to have been accompanied by exceptionally brutal or heinous behavior. (Ill. Rev. Stat. 1989, ch. 38, par. 1005—8—2 (now 730 ILCS 5/5—8—2 (West 1992)).) An extended-term sentence may only be imposed for offenses within the most serious class of offense of which the accused is convicted. (*People v. Holland* (1987), 121 Ill. 2d 136, 161; *People v. Jordan* (1984), 103 Ill. 2d 192, 206; *People v. Raue* (1992), 236 Ill. App. 3d 948, 953.) Because we reverse defendant's aggravated criminal sexual assault conviction, aggravated kidnaping is the most serious offense of which he stands convicted, and the trial court should consider whether it may, in accordance with law, impose an extended-term sentence for that offense.

Defendant's argument that the jury received improper instructions relates only to his conviction of aggravated criminal sexual assault. In view of our resolution of the issue of jurisdiction, we need not consider this argument. We next consider defendant's contention that his motion for substitution of judge should have been granted since this issue pertains to defendant's aggravated kidnaping conviction as well as his aggravated criminal sexual assault conviction.

This issue stems from proceedings in connection with a request by defendant that his original attorney, John Ridgway, be discharged. Early in July 1991, defendant sent a letter to the trial judge complaining of delay in bringing the case to trial, expressing dissatisfaction with attorney Ridgway's performance and ostensibly notifying the judge that defendant was dismissing attorney Ridgway. The salutation of the letter addressed the trial judge by his first name,

and the letter indicated that a copy was being sent to the news media. In court on July 8, the following colloquy took place:

"THE COURT: All right, Mr. Blanck. I received this letter from you this morning which, first of all, is most improper.

MR. BLANCK: Why is that?

THE COURT: Because the Court does not engage in ex parte communications with anyone.

MR. BLANCK: Well, you wouldn't give me a chance to—

THE COURT: Now, just be quiet. I am here and I am going to do the talking and you shut up. I have had it with you.

Now the way this thing is going to go is very simple. Mr. Ridgway will not be dismissed as your attorney. You are going to go to trial next week ***. You want a speedy trial, you got it.

MR. BLANCK: Sir, I have been violated.

THE COURT: You have not been violated. You claim a lot of things in the paper, in this paper that you sent me, that are not true. You are a very devious and a very clever man.

MR. BLANCK: I am a very honest person.

THE COURT: You are very devious and very clever. I will not put up with you. That's the end of it."

On July 12, attorney Ridgway moved to withdraw from the case, citing "a substantial breakdown in the attorney/client relationship in that defense counsel and Defendant have developed a personal animosity towards each other." The motion was granted. Thereafter, defendant filed a motion for substitution of judge for cause. (Ill. Rev. Stat. 1989, ch. 38, par. 114—5(d) (now 725 ILCS 5/114—5(d) (West 1992)).) Following a hearing before a different judge, the motion was denied.

■ Defendant notes that "in order to prevail on a motion for substitution of judge for cause, the defendant bears the burden of showing actual prejudice, animosity, hostility, ill will or distrust directed toward the defendant." (*People v. Butler* (1985), 137 Ill. App. 3d 704, 718; see also *People v. Mercado* (1993), 244 Ill. App. 3d 1040, 1047.) Defendant contends that the trial court's comment that defendant was "very clever" and "very devious" satisfies this burden. While the reported decisions provide little guidance with respect to the determination of whether a defendant has made the requisite showing, common sense dictates that an isolated comment by the trial court during a momentary lapse of judicial composure does not automatically disqualify the judge from presiding over the case. The concern is with a pervasive attitude of "animosity, hostility, ill will or distrust," which might affect the trial judge's performance of his or her judicial duties in a particular case. The judge who heard defendant's motion concluded that the trial judge had made an

"offhand, flippant remark," which did not establish that the trial judge would be unable to act fairly. We cannot say this conclusion was against the manifest weight of the evidence. (*Mercado*, 244 Ill. App. 3d at 1047.) Accordingly, we find defendant's argument to be without merit.

Defendant's final contention is that the trial court abused its discretion in sentencing him to the maximum extended term of 60 years' imprisonment for aggravated criminal sexual assault. Since we have concluded that defendant's conviction of that offense must be reversed, defendant's sentence for the offense is no longer at issue. However, defendant's argument is premised in part on the assertion that the trial court improperly considered unreliable information contained in the presentence report compiled pursuant to section 5—3—2 of the Unified Code of Corrections (Ill. Rev. Stat. 1989, ch. 38, par. 1005—3—2 (now 730 ILCS 5/5—3—2 (West 1992))). Because this case must be remanded for a new sentencing hearing on defendant's conviction of aggravated kidnaping and the issue is likely to recur below, it is in the interests of judicial economy that we consider defendant's contentions relative to the presentence report. The State correctly observes that defendant has waived any sentencing issues by failing to file a motion for reduction of his sentence. (See, *e.g.*, *People v. Pasch* (1992), 152 Ill. 2d 133, 216.) We conclude, however, that defendant's contentions are reviewable under the plain error rule. (134 Ill. 2d R. 615(a).) Moreover, since resentencing is necessary in any event, we believe that preventing the repetition of any error in this regard is in the interests of justice and overcomes considerations of waiver.

During sentencing, defendant objected to much of the information appearing under the heading "Family Structure and Background" in the presentence report. This section described a variety of misconduct and other circumstances reflecting negatively on defendant's character, including, *inter alia*, accounts of abusive behavior toward women, aberrant sexual behavior, substance abuse, generally erratic behavior, and possible fraud in obtaining social security benefits. Most of the information in this section apparently came from police reports prepared by a Milwaukee detective who interviewed members of defendant's family and his acquaintances. The presentence investigator did not speak with the detective who conducted the interviews and only personally communicated with defendant's mother and a girl friend. Defendant contends that much of this information is in the nature of evidence of offenses for which defendant was neither prosecuted nor convicted. Defendant also contends that the information is unreliable and, in particular, that much of it constitutes uncorroborated multiple hearsay.

The "Health" section of the presentence report indicates that defendant was referred to the Milwaukee County Mental Health Complex for treatment following a 1982 arrest for possession of marijuana. The report relates defendant's diagnosis by that facility and notes his sporadic attendance during $2^1/2$ years of outpatient treatment. This section also made reference to a psychological evaluation of defendant conducted by William Blaul of Horizons in Woodstock following defendant's arrest in the present case. According to the presentence report, Dr. Blaul characterized defendant as being " 'very manipulative and controlling attitude [sic];' displaying 'self admiration; grandiose manner; violent outbursts of anger and hostility.' " At sentencing, defendant objected to this section of the presentence report, and, in particular, he stated that the earlier counseling was in connection with a "telephone violation" rather than an arrest for possession of marijuana and the treatment spanned only six months.

It is true, of course, that the ordinary rules of evidence which govern at trial are relaxed during the sentencing hearing. (*E.g., People v. White* (1993), 241 Ill. App. 3d 291; *People v. Yeast* (1992), 236 Ill. App. 3d 84, 92.) Evidence presented at sentencing must be competent and material, and the sentencing court may search diligently for evidence which will be relied upon in aggravation or mitigation. (*White,* 241 Ill. App. 3d 291.) "The only requirement for admission is that the evidence be reliable and relevant [citations], as determined by the trial court within its sound discretion." (*People v. Foster* (1987), 119 Ill. 2d 69, 96.) In particular, it is well established that "evidence showing the defendant's commission of other crimes or acts of misconduct is admissible even though the defendant was not prosecuted or convicted for such conduct." *People v. Edgeston* (1993), 157 Ill. 2d 201, 246; see also *People v. Flores* (1992), 153 Ill. 2d 264, 296.

Hearsay testimony is not *per se* inadmissible at a sentencing hearing as unreliable or as denying a defendant's right to confront accusers; the objection goes to the weight of the evidence, not its admissibility. (*Foster,* 119 Ill. 2d 69. But see *People v. Marchell* (1991), 215 Ill. App. 3d 404, 406 ("[W]hile some hearsay may certainly be considered at sentencing [citation], it may be painting with too broad a brush to state that the fact that the statement is hearsay evidence has no relevance to the question of its admissibility at sentencing").) Information contained in a presentence report must necessarily consist in part of hearsay and other normally inadmissible evidence. (*People v. Cole* (1974), 23 Ill. App. 3d 620, 623; see also *People v. Monk* (1988), 174 Ill. App. 3d 528, 538 (hearsay is admissible in a presentence report).) A presentence report is generally a reliable source for

the purpose of inquiring into a defendant's criminal history. (*People v. Williams* (1992), 149 Ill. 2d 467, 491.) We also note that materials such as police "rap sheets" of convictions (*People v. Dennis* (1970), 47 Ill. 2d 120, 134-35) and prison disciplinary reports (*People v. Willis* (1992), 235 Ill. App. 3d 1060, 1074-75; *People v. Hartzol* (1991), 222 Ill. App. 3d 631, 647-48) have been held admissible during sentencing, and presumably the incorporation into the presentence report of information from such sources will normally be permissible.

Even so, the trial court must determine the accuracy and reliability of all factors considered in imposing sentence, including the facts contained in a presentence report. (*People v. Laramore* (1987), 163 Ill. App. 3d 783, 793; see also *Cole*, 23 Ill. App. 3d at 623 ("[T]he statutory authorization of [presentence] reports does not mean that the trial court must give great weight to the contents of the report").) While, as noted above, evidence of unprosecuted criminal conduct may be considered, we have stated that "[t]he trial judge must be cautious in admitting such proof and be sensitive to the possibilities of prejudice if such information is inaccurate." (*People v. Spears* (1991), 221 Ill. App. 3d 430, 436.) Moreover, our supreme court has specifically stated that such evidence "should be presented by witnesses who can be confronted and cross-examined, *rather than by hearsay allegations in the presentence report*, and the defendant should have an opportunity to rebut the testimony." (Emphasis added.) (*People v. Jackson* (1992), 149 Ill. 2d 540, 548.) Consistent with this statement, numerous decisions, in approving evidence of unprosecuted conduct, have emphasized the defendant's opportunity for cross-examination. See, *e.g.*, *People v. Demeron* (1987), 153 Ill. App. 3d 440, 444 ("A sentencing court may *** properly consider evidence of criminal activity not resulting in a conviction if relevant, accurate, and subject to cross-examination"); *People v. Siefke* (1981), 97 Ill. App. 3d 14, 16-17; *People v. Thomas* (1981), 96 Ill. App. 3d 443, 456 ("Testimony by witnesses with first-hand [*sic*] knowledge relating to other offenses or other charges can properly be introduced or relied upon by the court when imposing sentence where the witnesses are subject to cross-examination"); *People v. Carpenter* (1981), 95 Ill. App. 3d 722, 727 (same); *People v. Dominique* (1980), 86 Ill. App. 3d 794, 809 (same); *People v. Stoutenborough* (1978), 64 Ill. App. 3d 489, 493-94 ("The cases clearly indicate that if information [regarding crimes not resulting in a conviction] is to be received it should be presented, as here, by the firsthand testimony of the witnesses involved and that mere allegations of the offense, hearsay accounts thereof or records of the arrest of the defendant for the offenses are insufficient," but "where *** the allegations are supported by competent evidence,

their existence in the presentence report is proper"); see also *People v. Spiezio* (1989), 191 Ill. App. 3d 1067, 1078 (noting that, *inter alia*, by striking from presentence report any information that the State could not support with witness testimony, "the trial court exercised great care to insure the accuracy of the information considered and to shield itself from the potentially prejudicial effect of any improper evidence").

■ In the case at bar, much of the information in the "Family Structure and Background" section to which defendant objected is or could be construed as evidence of unprosecuted offenses. This information includes, *inter alia*, allegations that defendant beat his wives and a girlfriend, tied up women for sexual relations and for other purposes, was involved in sexual conduct involving juveniles (including, on separate occasions, his sister and his son), purchased and used illegal drugs and threatened a neighbor with a weapon. The presentence report also intimates that defendant may have fraudulently obtained social security benefits. We agree with defendant that absent testimony supporting allegations of this sort, they should have been stricken from the presentence report.

Moreover, as defendant notes, in *People v. Spears* (1991), 221 Ill. App. 3d 430, we observed that while hearsay is not *per se* inadmissible at sentencing, "double hearsay should be corroborated, at least in part, by other evidence." (221 Ill. App. 3d at 437, citing *People v. Tigner* (1990), 194 Ill. App. 3d 600, 607.) In *Spears,* we concluded that in sentencing the defendant the trial court erred by relying on an account in the presentence report of defendant's alleged participation in a prior shooting incident. The State represented that the account was derived from the factual basis underlying the defendant's guilty plea in connection with the earlier offense, but the defendant disputed the substance of the account and the prosecutor's understanding of the origin of the account. Citing *People v. Washington* (1984), 127 Ill. App. 3d 365, we noted that the source of the information regarding the prior shooting incident was not known, and we observed that "the item is double or triple hearsay repeated from a partisan interpretation of the facts of the incident." (*Spears,* 221 Ill. App. 3d at 438.) Here, the presentence investigator obtained much of the information regarding defendant's background from reports of interviews a Milwaukee detective conducted with members of defendant's family and certain acquaintances; the presentence investigator did not personally communicate with these individuals. While, unlike *Spears,* the source of this information is identified, the information violates *Spears'* proscription against uncorroborated multiple hearsay.

We note that the purpose of the presentence report is to collect

all the necessary information for the trial judge before sentence is imposed. (*People v. Williams* (1992), 149 Ill. 2d 467, 488.) The presentence investigation must be conducted by a neutral party. (730 ILCS Ann. 5/5—3—1, Council Commentary—1973, at 283 (Smith-Hurd 1992).) The objective of neutrality is compromised, however, when in compiling general information about the defendant's family situation and background the presentence investigator conducts no independent investigation, instead relying almost entirely on police reports and interviews conducted not with sentencing considerations in mind, but as part of a criminal investigation.

On remand for resentencing for defendant's aggravated kidnaping conviction, the trial court is directed to consider defendant's objections to the "Family Structure and Background" section of the presentence report in accordance with the foregoing principles.

With respect to the "Health" section of the presentence report, we believe psychiatric evaluations and opinions are an appropriate source of information for the presentence report. (Accord *People v. Jones* (1982), 94 Ill. 2d 275, 287-88.) We agree with the State's general observation that the statutory provisions requiring presentence reports contemplate use of a variety of sources in the preparation of the report, and subject to the principles discussed above, there is no absolute right "to cross-examine all out-of-court sources of information relied upon in sentencing." (*Jones*, 94 Ill. 2d at 286.) Accordingly, while defendant contends that the presentence report contains no basis for evaluating the reliability of psychiatric or psychological evaluations or diagnoses recited in the report, we think that in a sentencing context the objection goes to weight rather than admissibility.

During sentencing, defendant specifically disputed statements in the presentence report about the basis for and duration of his mental health treatment in the 1980's. Defendant suggests that the dispute should have been resolved by reference to actual treatment records. Without expressing any opinion as to whether reversible error in this regard occurred below, we believe that it is appropriate that on remand defendant have access to available records relating to this treatment for purposes of resolving the specific factual dispute raised.

For the foregoing reasons, defendant's conviction of aggravated criminal sexual assault is reversed. Defendant's conviction of aggravated kidnaping is affirmed, the sentence for that offense is vacated, and the cause is remanded to the circuit court of McHenry County for resentencing for that offense in accordance with the views expressed herein.

238

Affirmed in part; reversed in part; vacated in part and remanded with directions.

GEIGER and BOWMAN, JJ., concur.