2021 IL App (2d) 200032-U
No. 2-20-0032
Order filed May 26, 2021

**NOTICE:** This order was filed under Supreme Court Rule 23(b) and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of Kendall County. |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | No. 17-CF-205 |
| JACOB R. KAMINSKI, | ) ) | Honorable Robert P. Pilmer, |
| Defendant-Appellant. | ) | Judge, Presiding. |

PRESIDING JUSTICE BRIDGES delivered the judgment of the court.
Justices Hudson and Birkett concurred in the judgment.

**ORDER**

¶ 1   *Held*: An eight-year prison sentence for aggravated driving under the influence (DUI) was not an abuse of discretion where defendant caused a collision that killed another driver and her unborn child and where defendant was likely to reoffend given his criminal history (including a prior DUI arrest) and his struggles with alcohol. Also, to the extent that the trial court considered the death of the unborn child in judging the seriousness of the aggravated DUI, this was not an impermissible double enhancement, because the factor that elevated the DUI to aggravated DUI was the death of the mother, not the unborn child.

¶ 2   Defendant, Jacob R. Kaminski, appeals his sentence for aggravated driving under the influence (DUI) (625 ILCS 5/11-501(d)(1)(F) (West 2016)) and reckless homicide of an unborn child (720 ILCS 5/9-3.2(a), (b)(2) (West 2016)). He contends that his aggregate sentence of eight

years' incarceration was excessive and that the trial court improperly applied a double enhancement by considering the death of the unborn child when sentencing him on the DUI conviction. We affirm.

¶ 3                                    I. BACKGROUND

¶ 4      On August 14, 2019, defendant pleaded guilty to aggravated DUI and reckless homicide of an unborn child. The factual basis for the plea was that, on June 30, 2017, Rebecca Brown and Jaquan Stovall were driving southbound on Ridge Road in Kendall County at approximately 55 miles per hour when a pickup truck driven by defendant approached from the rear at a high rate of speed and started to pass them. The truck then collided head-on with another vehicle driven by Alexis Danley, which was in its proper lane and traveling in the opposite direction. The collision resulted in the death of Danley, who was pregnant at a term of approximately 20 to 22 weeks. The unborn child died because of Danley's death. Danley's ten-month-old daughter was in the back seat but was removed in good health. Defendant's blood was drawn at a hospital and revealed a blood-alcohol content of 0.167.

¶ 5      Evidence was presented at sentencing that defendant's vehicle was traveling at 98 miles per hour when it struck Danley's vehicle. Brown's vehicle was struck in the rear by either Danley's or defendant's vehicle. Witnesses who arrived at the scene of the collision testified that Danley was unable to talk and had difficulty breathing. A paramedic who responded to the collision described her condition as "[v]ery poor." She was unresponsive, did not have a pulse, and had raspy respiration of the type usually seen shortly after a person expires. Paramedics attempted to give aid for 15-20 minutes before calling medical control for a time of death. Danley was in her late 20s at the time of her death.

¶ 6    Another paramedic testified that he attended to defendant at the scene and found him uncooperative. Defendant tried to unbuckle safety straps on a stretcher, tore off a device used to protect the neck and spine, and pulled out his IV. Defendant denied consuming alcohol and told a county sheriff patrol officer that he had swerved into the oncoming lane because the vehicle in front of him had "hit their brakes." The officer detected the odor of alcohol on defendant's breath. Defendant refused to voluntarily submit to a DUI kit, and his blood was drawn per a search warrant.

¶ 7    The State presented evidence that defendant had one prior arrest for DUI. Tracy Caliendo testified that, on January 2, 2015, she was employed as a police officer and observed defendant driving 63 miles per hour in an area with a speed limit of 30 or 35 miles per hour. Within the mile that she followed defendant's vehicle, she saw it "go into the oncoming lane *** a few times" in a no-passing zone. In one instance, his vehicle went almost completely into the oncoming lane. When she activated her lights, defendant slowed and opened the driver's side door while his vehicle was still moving. Defendant told her that he was going to his mother's house and gave an address that did not exist. He admitted that he was drunk, and a Breathalyzer test showed that he had a 0.216 blood-alcohol content. Defendant told Caliendo that he had been drinking since age 12. He was diabetic and took insulin while drinking. That combination "makes him super fucked up." He also said that "he drinks and drives all the time, drives fucked up, and fucking pigs still catch him every time," and that "it was a fuckin' joke." On cross-examination, Caliendo agreed that she had seen drunk people say stupid things, but she claimed that she "couldn't verify" whether some of the things drunk people say are untrue. Defendant received supervision for the prior DUI, which was successfully terminated on April 21, 2017.

¶ 8      The presentence investigation report (PSI) showed defendant's prior DUI and his arrests for unlawful possession of liquor by a minor and fleeing or attempting to elude an officer. A DUI evaluation in 2018 scored him as a " '[p]roblem drinker.' " He was recommended for high-risk counseling with substance abuse treatment. He had previously completed significant risk DUI counseling in 2016. Although the PSI indicated that defendant was attending personal counseling, the PSI did not indicate whether he had sought the previously recommended substance abuse treatment. The PSI found that defendant was at low risk for recidivism but did not make a specific sentence recommendation. Defendant suffered in the collision a serious laceration to his leg and dislocated hip, necessitating the replacement of that joint and the use of a cane. He was 25 years old at the time of sentencing.

¶ 9      Numerous witnesses testified for defendant, stating that he was a giving person who looked out for other people. He was described as a good employee who went above and beyond in his duties. He had been promoted from a sales position to a management position. A minister testified that defendant had become religious shortly before the collision and had volunteered at public events both as a DJ and as an organizer. Witnesses described him as extremely remorseful about the incident, and they claimed that the crime was out of character for him and would not be repeated. Witnesses reported that defendant was going to counseling. Defendant also presented multiple letters of support providing similar statements about his good character.

¶ 10     Defendant gave a statement in allocution in which admitted responsibility for his actions, apologized to Danley's family, and expressed remorse. He stated that, since the collision, he had been baptized and attended counseling. Members of Danley's family provided victim impact statements.

¶ 11 The State listed each statutory factor in mitigation and argued that none applied. The State also argued that the defense witnesses did not know the side of defendant that acted poorly toward law enforcement during his two arrests for DUI. The State suggested that defendant's demeanor on those occasions showed that the offense could recur. The State also noted the seriousness of the crime and argued that the death of the unborn child was an aggravating circumstance in the DUI offense. The State asked for the maximum sentence of 14 years' incarceration for the aggravated DUI. Defendant asked for the minimum sentence of three years' incarceration, arguing at length that the numerous witnesses who testified in his defense showed that he had good character and that the offense would not recur. He did not seek probation.

¶ 12 The trial court stated that it considered the testimony and exhibits. In aggravation, the court noted defendant's criminal history and the need for deterrence. In particular, the court noted that defendant committed the crime within several months of completing supervision after his prior DUI. The court stated that, "beyond accepting responsibility for his actions, there are no other mitigating factors favoring [defendant]." The court specifically stated that is considered the numerous statements from defendant's friends and family. It also observed that the PSI listed defendant at low risk for recidivism. The court then stated:

> "The common theme of the evidence in mitigation was that [defendant] would do anything for anyone, he's the most kind-hearted person, he's kind and caring and he's remorseful.
>
> As his father stated, how do you reconcile his conduct and behavior that his family and friends have known with his conduct on the night of the accident and his behavior toward Officer Caliendo. As he said, he really can't reconcile that behavior because it's not [defendant].

The problem is[,] is that it is [defendant]. One event may not define a person's entire life, but it provides insight into a person's true character."

¶ 13　The court sentenced defendant to eight years' incarceration for the aggravated DUI and a concurrent four years for reckless homicide of an unborn child. The court also imposed various fines and fees and ordered defendant to pay, from his bond, restitution to Danley's family for funeral expenses.

¶ 14　Defendant moved for reconsideration of the sentence, arguing that the court failed to consider all the mitigating factors. The court stated that its sentence was appropriate and denied the motion. Defendant appeals.

¶ 15　　　　　　　　　　　　　　II. ANALYSIS

¶ 16　Defendant first contends that his sentence was excessive. He argues that the trial court failed to consider (1) factors in mitigation presented by numerous people who testified or wrote letters on his behalf, (2) his medical conditions, or (3) his payment of restitution.

¶ 17　"[T]he trial court is in the best position to fashion a sentence that strikes an appropriate balance between the goals of protecting society and rehabilitating the defendant." *People v. Risley*, 359 Ill. App. 3d 918, 920 (2005). Thus, we may not disturb a sentence within the applicable sentencing range unless the trial court abused its discretion. *People v. Stacey*, 193 Ill. 2d 203, 209-10 (2000). A sentence is an abuse of discretion only if it is at great variance with the spirit and purpose of the law or is manifestly disproportionate to the nature of the offense. *Id.* at 210. We may not substitute our judgment for that of the trial court merely because we might have weighed the pertinent factors differently. *Id.* at 209.

¶ 18　In determining an appropriate sentence, relevant considerations include the nature of the crime, the protection of the public, deterrence and punishment, the defendant's rehabilitative

prospects, and youth. *People v. Kolzow*, 301 Ill. App. 3d 1, 8 (1998). The weight to be attributed to each factor in aggravation and mitigation depends upon the circumstances of the case. *Id.* "The seriousness of the crime is the most important factor in determining an appropriate sentence, not the presence of mitigating factors." *People v. Quintana*, 332 Ill. App. 3d 96, 109 (2002). "Depending upon the circumstances, evidence of a defendant's problems with alcohol may be considered as either mitigating or aggravating [citation] or as refuting any of the statutory mitigation or aggravation factors [citation]." *People v. Tross*, 281 Ill. App. 3d 146, 153 (1996). Alcohol abuse as manifested in alcohol-related crimes may bear upon whether the current offense was the result of circumstances unlikely to recur and whether the character and attitudes of the defendant indicate that he is unlikely to commit another crime. *Id.* at 152. The trial court need not recite all the factors before imposing a sentence. *People v. Spicer*, 379 Ill. App. 3d 441, 469 (2007). It is presumed that the court considered all the factors unless the record indicates the contrary. *Id.*

¶ 19    Here, unless extraordinary circumstances existed that justified probation (and defendant makes no such claim), the sentencing range for aggravated DUI was 3 to 14 years' incarceration. 625 ILCS 5/11-501(d)(1)(F), (d)(2)(G) (West 2016). The sentencing range for reckless homicide of an unborn child, a Class 3 felony, was 2 to 5 years. 720 ILCS 5/9-3.2(a), (b)(2) (West 2016); 730 ILCS 5/5-4.5-40(a) (West 2016). The trial court, recognizing the seriousness of the crime, the need for deterrence, and defendant's criminal history, appropriately sentenced him to 6 years less than the maximum possible term.

¶ 20    Defendant claims that the trial court failed to consider the mitigating evidence presented by his numerous witnesses and that this failure was manifested in two of the court's remarks: (1) "beyond accepting responsibility for his actions, there are no other mitigating factors favoring [defendant]"; and (2) "[o]ne event may not define a person's entire life, but it provides insight into

a person's true character." But the record, as a whole, shows that the court did not fail to consider defendant's evidence. Instead, it considered it and gave it no weight. The court specifically addressed the testimony and letters provided on defendant's behalf yet gave them no weight based on his behavior following both DUI offenses. The court was entitled to make factual findings about defendant's character based on those instances, and we will not reweigh the evidence on appeal.

¶ 21    Defendant also argues that the trial court failed to address his medical conditions. However, the record shows that the court was aware of defendant's medical conditions, as multiple witnesses provided testimony about the subject. The court was not required to state every factor that it considered; we presume that the court considered this evidence but gave it no weight.

¶ 22    Defendant also notes that the PSI found that he was at low risk for recidivism. The trial court, however, was not bound to accept all findings and conclusions in the PSI. See *People v. Blanck*, 263 Ill. App. 3d 224, 235 (1994); *People v. Cole*, 23 Ill. App. 3d 620, 622 (1974). The court could find that defendant was likely to reoffend given that he committed the crime just a few months after completing supervision for his prior DUI. The court evidently found that defendant's struggle with alcohol refuted mitigating factors, or was an aggravating factor, because it increased the likelihood of recidivism. *Tross*, 281 Ill. App. 3d at 153. That finding was well supported by the record.

¶ 23    Defendant also asserts that the trial court failed to reconsider in mitigation his payment of restitution. The record shows that defendant generally did not object to payment of restitution. However, the restitution was ordered by the court at sentencing and taken from defendant's bond. The record does not show voluntary payment of restitution before sentencing.

¶ 24    Defendant's other argument on appeal is that his sentence was based on an impermissible double enhancement. A single factor cannot be used both as an element of an offense and as a

basis for imposing a "harsher sentence than might otherwise have been imposed." *People v. Gonzalez*, 151 Ill. 2d 79, 83-84 (1992). Defendant notes that the State argued that the death of the unborn child was an aggravating factor in the DUI offense and that the trial court found "compelling" the State's argument for a substantial term of imprisonment. Thus, defendant suggests that the court by implication wrongly considered the death of the unborn child as an aggravating factor in the DUI offense. We note, first, that the record does not affirmatively show that the court factored the death of the unborn child into its sentence for aggravated DUI. Second, defendant does not provide authority to support his assertion that the court could not consider the harm to the unborn child as part of the seriousness of the DUI. As charged in the indictment, the aggravating factor in the DUI was Danley's death, not the death of the unborn child.

¶ 25                                 III. CONCLUSION

¶ 26    For the reasons stated, the judgment of the circuit court of Kendall County is affirmed.

¶ 27    Affirmed.