NOTICE

Decision filed 02/06/20. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

2020 IL App (5th) 190139-U

NO. 5-19-0139

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

NOTICE

This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Clinton County. |
| | ) | |
| v. | ) | No. 12-CF-117 |
| | ) | |
| JERRY BIEGELEISEN, | ) | Honorable |
| | ) | Stanley M. Brandmeyer, |
| Defendant-Appellant. | ) | Judge, presiding. |

_____

JUSTICE OVERSTREET delivered the judgment of the court.
Presiding Justice Welch and Justice Wharton concurred in the judgment.

**ORDER**

¶ 1    *Held:* Circuit court properly entered second-stage dismissal of the defendant's petition for postconviction relief because petition failed to set forth a substantial claim of a constitutional violation.

¶ 2    The defendant, Jerry Biegeleisen, appeals the second-stage dismissal of his petition filed pursuant to the Post-Conviction Hearing Act (Act) (725 ILCS 5/122-1 *et seq.* (West 2018)). On appeal, the defendant argues that the circuit court erred in dismissing his petition because he made a substantial showing of ineffective assistance of trial counsel, posttrial counsel, and appellate counsel. The defendant requests this court to docket the matter for a third-stage evidentiary hearing pursuant to the Act. For the following reasons, we affirm the circuit court's judgment.

1

¶ 3                    BACKGROUND

¶ 4    On January 15, 2013, the State charged the defendant with five counts of predatory criminal sexual assault of a child (720 ILCS 5/11-1.40 (West 2012)) and one count of criminal sexual assault (*id.* § 11-1.20(a)(3)). On January 22, 2013, the defendant entered an *Alford* plea (*North Carolina v. Alford*, 400 U.S. 25 (1970)) to one count of predatory criminal sexual assault of a child. According to the terms of the defendant's partially negotiated plea, the remaining predatory criminal sexual assault charges were dismissed so that the defendant would avoid mandatory consecutive sentences, no charges relating to a house fire affecting the victim's family were pursued, and the defendant was not charged with similar sexual assault offenses in Marion County. As to potential sentences, the circuit court advised the defendant that the predatory criminal sexual assault charge carried a minimum term of 6 years' imprisonment and a maximum term of 60 years' imprisonment, which would be followed by a period of mandatory supervised release. The circuit court also advised the defendant that the charge carried a possible fine of up to $25,000.

¶ 5    The State presented as the factual basis for the plea that S.B., the defendant's former wife, would testify that the defendant was born on April 4, 1977, and that her daughter, referred to in the amended information as Jane Doe, was born on August 18, 1998. The State also set forth that Jane would testify to incidents occurring between June 1, 2008, and August 17, 2011, when she was not yet 13 years old, wherein the defendant removed her clothing and placed his penis in her vagina. The State also set forth that Dr. Jonathan Thackeray, Jane's treating physician, would show photos of a pelvic vaginal exam of Jane, would describe in detail that her hymen showed notching at the three-o'clock position, and would testify that such an injury was consistent with Jane's allegations against the defendant. Thereafter, the circuit court concluded

that a sufficient factual basis supported the plea and that the plea was knowingly and voluntarily made.

¶ 6    On February 11, 2013, the State tendered to the court two sentencing exhibits: (1) a December 28, 2011, Child Advocacy Center interview with Jane conducted in Columbus, Ohio, and (2) a video-recorded interview by Detective Charlie Becherer with Jane on June 29, 2012. The State noted, and trial counsel confirmed, that the defendant had no objection to the court viewing the videos prior to the day of the sentencing hearing. The defendant acknowledged that he had discussed it with his attorney and was satisfied with proceeding in such a manner.

¶ 7    At the March 6, 2013, sentencing hearing, Jane read her statement, admitted as an exhibit, to the court. Jane's statement revealed that when she was 5 years old, the defendant started putting his penis in her mouth two or three times a week, and when she was 12 years old, he started putting his penis in her vagina. Jane stated that to prevent her from telling someone, the defendant intimidated her by killing animals. Jane stated that she did not trust anyone and felt afraid to "get close to anything." Jane stated that she cried a lot because she thought "this will never be normal." Jane stated that she suffered from nightmares and headaches, had difficulty concentrating, and thought about the sexual abuse every day. Jane stated that she was often sick and absent from school. Jane stated that she wished she would have had a chance at a normal and happy childhood. Jane stated that she believed the defendant should be sentenced to a 50-year term in prison.

¶ 8    At the sentencing hearing, the State and trial counsel stipulated to the admission of the two videotaped interviews with Jane. The State also presented in aggravation S.B.'s testimony. S.B. testified that eight days after the circuit court entered a no-contact order bond condition against the defendant, the defendant kicked in her front door, breaking the regular and chain

3

locks, and entered the marital home while she, Eddie Dodson, and Jane, along with three other children, were present. S.B. testified that the defendant challenged Eddie to a fight. Eddie's testimony confirmed that incident. Eddie further stated that after he declined to fight the defendant, he drove away in his truck, and the defendant followed him for a distance. The circuit court took judicial notice of the September 14, 2012, bond condition prohibiting the defendant's contact with Jane.

¶ 9    The State argued that the defendant's conduct caused or threatened serious harm. The State noted that through the Child Advocacy Center interview, Jane had disclosed anal-genital contact, genital-genital contact, oral-genital contact, exposure to domestic violence, and exposure to pornography. The State reiterated that Dr. Thackeray's report had revealed a physical exam showing a "transection of more than 75 percent which is diagnostic of a penetrated injury," thereby showing actual physical harm, as well as emotional trauma. The State argued in aggravation that the abuse had been ongoing since Jane had been five years old and that defendant held a position of trust and supervision over Jane. The State further noted that the defendant's criminal history included a conviction for burglary and that the defendant had been subject to two orders of protection S.B. had filed during the investigation of this case and five previous orders of protection filed against him by his ex-wife, Misty Biegeleisen.

¶ 10    In arguing that the defendant's rehabilitative potential was minimal, the State argued that defendant would say anything to receive the least restrictive sentence, but he was not invested in acquiring help or rehabilitating himself. The State recommended a sentence of 60 years' imprisonment, the maximum sentence, due to the defendant's lack of remorse, prior criminal history, and the need for deterrence. Also, the State requested that the defendant be ordered to

reimburse Sexual Assault and Family Emergencies (SAFE) the costs of the victim's counseling services, which totaled $2892.50.

¶ 11 In mitigation, the defendant presented the testimony of his sister, Angela Cluck. Angela identified a photo of the defendant, S.B., and four children, including Jane, taken Mother's Day 2012. Trial counsel argued that the family photograph was inconsistent with the allegations that the defendant sexually assaulted Jane from age 5 until age 12. Trial counsel further noted that although Jane had alleged that the defendant engaged in anal intercourse since she was five years old, the medical report indicated no evidence of anal trauma. Trial counsel further noted the absence of domestic battery with regard to the no-contact orders and argued that serious harm was inherent in the offense and could not be considered as a factor in aggravation.

¶ 12 Trial counsel advised the court that although he had discussed with the defendant his right to testify and his right to make a statement of allocution, the defendant did not wish to testify. Trial counsel further advised the court that he had received the presentence investigation report (the PSI), had reviewed it with the defendant, and had no suggested changes, corrections, or additions. Trial counsel requested the minimum sentence of 10 years.

¶ 13 Prior to imposing sentence, the circuit court read from a report prepared by Detective Becherer, which was attached to the PSI, wherein Jane's brother had reportedly stated that although he did not witness any sexual relations between the defendant and Jane, the defendant had taken Jane into the garage several times and had prohibited anyone from entering the garage while they were in it. The circuit court revealed that another brother of Jane's had reportedly stated that when he was six years old, the defendant had called Jane into his bedroom, and when he looked into the bedroom, he saw the defendant on top of Jane, who was lying on her back on the bed. The circuit court revealed that a third brother had stated that the defendant would send

5

the brothers outside or to their grandmother's home while Jane stayed in the house, that the defendant would lock the boys out of the home, and that after about 20 minutes, the brothers would return when Jane was in the shower. This brother also stated that the defendant had taken Jane into the garage, locking the door and closing the curtain on the window. The circuit court concluded that these statements substantiated Jane's statements, as well as the information she provided to the Child Advocacy Center, and contradicted any implication that Jane had fabricated or exaggerated her claims. The circuit court thus noted that it had reviewed the video recorded interviews admitted by stipulation.

¶ 14    The circuit court found as factors in aggravation the defendant's prior burglary conviction, defendant's position of trust and supervision over Jane, the defendant's failure to take responsibility for the offense, and the defendant's violation of the terms and conditions of his bond. Accordingly, the circuit court sentenced the defendant to 40 years' imprisonment with the Department of Corrections, followed by 3 years of mandatory supervised release, and assessed fines and costs, including restitution for Jane's counseling.

¶ 15    After sentencing, the defendant obtained different counsel. On November 7, 2014, the defendant, through postsentencing counsel, filed an amended motion to withdraw the guilty plea or reconsider sentence, asserting that trial counsel had not questioned the correctness of the attachment to the PSI, which was a copy of records from Franklin County, Ohio, Children Services. In the amended motion, the defendant also argued that his trial counsel was ineffective for failing to adequately investigate the medical evidence, calling only one witness in mitigation, and failing to present other mitigation evidence even though several of the defendant's family members were available to testify as to his good character.

¶ 16    At the November 10, 2014, hearing on the amended motion to withdraw the guilty plea, the defendant testified that he spoke to his trial attorney twice for approximately 15 minutes before entering his guilty plea, that he did not know that he would be entering into an *Alford* plea until the morning of the guilty plea hearing, and that he only had five minutes to decide whether to enter a guilty plea. He testified that, after the guilty plea hearing, he did not meet with his trial attorney again until the day of the sentencing hearing. The defendant testified that at the sentencing hearing, his trial counsel did not call witnesses to testify about his good character even though he had approximately 20 people in court attendance, ready to testify. The defendant testified that trial counsel told him, "Nobody wants to testify." The defendant's postsentencing motion counsel argued that the defendant's trial counsel had disregarded information in his analysis of the case and that he should have presented argument or testimony at sentencing. After hearing the defendant's testimony and postsentencing counsel's arguments, the circuit court indicated that testimony of a defendant's relatives saying nice things about him is generally not persuasive at sentencing. Stating that the defendant's sentence appropriately reflected his history and the circumstances of his case, the circuit court denied the defendant's motion to withdraw his plea, motion to vacate judgment, and motion to reconsider sentence.

¶ 17    The defendant appealed, and the Office of the State Appellate Defender was appointed to represent the defendant on appeal. On appeal, the defendant argued that he was entitled to withdraw his guilty plea because his plea was involuntary and unintelligent where the circuit court failed to properly admonish him that he may be ordered to pay restitution as part of his sentence. This court affirmed the defendant's conviction and sentence, concluding that the defendant was not unfairly prejudiced by the incomplete admonishments. *People v. Biegeleisen*, 2018 IL App (5th) 140597-U.

7

¶ 18    On October 19, 2018, the defendant, represented by private counsel, filed a petition for postconviction relief. 725 ILCS 5/122-1(a)(1) (West 2018). In his petition, the defendant alleged that his trial counsel was ineffective at sentencing for failing to utilize mitigating evidence, including nine live witnesses and a favorable actuarial risk-assessment instrument, for agreeing that the PSI report was accurate when it was not, and for failing to object to the inclusion in the PSI of a police report and Child Advocacy Center videos that were inadmissible as hearsay. In the postconviction petition, the defendant alleged that postsentencing counsel and appellate counsel were also ineffective for failing to raise the same issues.

¶ 19    In his attached affidavit, the defendant stated that the PSI included errors, such as the claim that he had not acquired his general education degree (GED). The defendant stated that he had notified trial counsel of the inaccuracy, but trial counsel did not correct the misinformation. The defendant stated that he also notified trial counsel that he had "at least 20 people present" to testify at his sentencing hearing. The defendant attached to his petition nine affidavits of persons who stated they were ready, willing, and able to testify at the sentencing hearing.

¶ 20    In an attached affidavit, Jason Beasley stated that he had known the defendant since the first grade, that the defendant helped to financially support his education, and that the defendant was a reliable and dependable roommate. Jason stated that he considered the defendant a part of his family and had witnessed the defendant caring for his wife and stepchildren. Jason stated that he observed their daily routines, interactions, mealtimes, homework, and discipline. Jason stated that he had been ready, willing, and able to testify on the defendant's behalf at sentencing.

¶ 21    In an affidavit, Tim Biegeleisen, the defendant's cousin, stated that he had lived with the defendant, S.B., and the children. Tim stated that he had observed the defendant during evening meals, homework time, and recreation time and that the defendant treated his family well. Tim

stated that the defendant was a "hard worker" and "protective of those he cares about." Tim stated he had been available to testify on the defendant's behalf at sentencing, that he had expected to be called to testify in mitigation at the defendant's sentencing hearing, but that he had not been contacted by the defendant's trial counsel.

¶ 22    In an affidavit, Eddie Higgins stated that the defendant had provided emotional support to him in the past. Eddie stated that the defendant had spoken well of S.B. and his stepchildren and had been completely devoted to providing for them. Eddie stated that he advised the defendant that he was ready, willing, and able to testify for him at sentencing but was not contacted by the defendant's counsel.

¶ 23    In an affidavit, Shane Wilson stated that he had known the defendant throughout his life and had worked with him for four years. Shane stated that he had never observed the defendant act inappropriately. Shane stated that he had notified the defendant that he was willing to testify in mitigation at sentencing, but the defendant's trial counsel had not contacted him.

¶ 24    In an affidavit, Rhonda Gibson stated that she had known the defendant since grade school and that the defendant had helped to support her financially and emotionally. Rhonda stated that the defendant had shared with her that he had learned that his stepdaughter's biological father had taken nude photos of her as a child and that the defendant was devastated as a result. Rhonda stated that her children had been raised around the defendant and considered him family. Rhonda stated that she had expected to testify in mitigation at the defendant's sentencing, but the defendant's trial counsel had not contacted her.

¶ 25    In an affidavit, Angela Jane Cluck, the defendant's sister, stated that the defendant had maintained full-time jobs and had provided necessities for the children. Angela stated that the defendant had been generous with his time and finances and protective of his loved ones. Angela

9

stated that the defendant had acquired his GED when he was 19 or 20 years old. Angela stated she had been called to testify at sentencing, but the defendant's trial attorney had not utilized information she had provided about the defendant's character.

¶ 26    In an affidavit, John Biegeleisen Sr., the defendant's uncle, stated that the defendant had treated S.B.'s children as his own. John stated that he never witnessed the defendant act inappropriately. John stated that he had advised the defendant that he wanted to testify for him at sentencing, but the defendant's trial counsel had not contacted him.

¶ 27    In an affidavit, John Biegeleisen, the defendant's cousin, stated that the defendant had been willing to help him and his children and had provided support through his recovery from drug addiction and the death of his wife. John stated that he had advised the defendant that he wanted to testify for him at sentencing, but the defendant's trial counsel had not contacted him.

¶ 28    In an affidavit, Lauren Biegeleisen, the defendant's cousin, stated that she had frequently spent the night at the defendant's home when she was a child. Lauren stated that she had been available to testify about her experience with the defendant and the defendant's character.

¶ 29    In an affidavit, Tracy Marie Stephens stated that she and the defendant were friends who had worked together. Tracy stated that she could have testified regarding the defendant's work ethic and his relationship with his family, wife, and stepchildren. Tracy stated that she had told the defendant she had been willing to testify in mitigation at his sentencing, but the defendant's trial counsel had not contacted her.

¶ 30    The defendant also attached an Illinois State Board of Education form dated June 17, 1995, indicating that the defendant had acquired his GED.

¶ 31    On December 21, 2018, the State filed a motion to dismiss the defendant's petition, and on March 21, 2019, the circuit court entered its order on the State's motion to dismiss. The

10

circuit court found no reasonable probability that, but for the introduction of the videos, PSI evidence, or any of the other alleged actions of counsel, the result of the penalty phase of the defendant's open plea to the court would have yielded a different result. The circuit court noted that it had properly admonished the defendant and that the record contradicted the defendant's allegations. The circuit court concluded that the defendant's allegations in his petition did not make a substantial showing of a constitutional violation and granted the State's motion to dismiss the defendant's postconviction petition. Accordingly, the circuit court found no constitutional deficiency with regard to postsentencing counsel or appellate counsel. On April 5, 2019, the defendant filed a timely notice of appeal.

¶ 32                                              DISCUSSION

¶ 33    On appeal, the defendant contends that the circuit court erred when it dismissed his postconviction petition without an evidentiary hearing because the petition made a substantial showing of a constitutional violation that the defendant was denied the effective assistance of counsel where (1) trial counsel presented no witnesses in mitigation despite the availability of at least nine mitigation witnesses, agreed the PSI was accurate when it was not, failed to capitalize on the actuarial risk-assessment results that were favorable to the defendant, and failed to object to the court's consideration of videos and police reports that were inadmissible hearsay; (2) postsentencing counsel failed to allege trial counsel ineffective for same errors; and (3) appellate counsel failed on appeal to allege prior counsels' ineffective assistance.

¶ 34    The Act sets forth a procedural mechanism through which a defendant can claim that "in the proceedings which resulted in his or her conviction there was a substantial denial of his or her rights under the Constitution of the United States or of the State of Illinois or both." 725 ILCS 5/122-1(a)(1) (West 2018). In a postconviction proceeding, the trial court "does not

11

redetermine a defendant's guilt or innocence, but instead examines constitutional issues which escaped earlier review." *People v. Greer*, 212 Ill. 2d 192, 203 (2004).

¶ 35    The Act provides a three-stage process for the adjudication of a postconviction petition. *People v. Cotto*, 2016 IL 119006, ¶ 26. At the first stage, the trial court independently assesses the defendant's petition, and if the court determines that the petition is "frivolous" or "patently without merit," the court may summarily dismiss it. 725 ILCS 5/122-2.1(a)(2) (West 2018); *People v. Edwards*, 197 Ill. 2d 239, 244 (2001). To survive the first stage, a petition need only show the "gist of a constitutional claim." *People v. Gaultney*, 174 Ill. 2d 410, 418 (1996). If a petition is not summarily dismissed at the first stage, it advances to the second stage, where an indigent petitioner can obtain appointed counsel and the State can file responsive pleadings. 725 ILCS 5/122-2.1(b), 122-4, 122-5 (West 2018). At the second stage, the trial court determines whether the petition and any accompanying documents make a substantial showing of a constitutional violation. *Edwards*, 197 Ill. 2d at 246. If a substantial showing of a constitutional violation is made, the petition proceeds to the third stage for an evidentiary hearing; if no substantial showing is made, the petition is dismissed. *Id.*

¶ 36    The defendant bears the burden of making a substantial showing of a constitutional violation. *People v. Pendleton*, 223 Ill. 2d 458, 473 (2006). "[T]he 'substantial showing' of a constitutional violation that must be made at the second stage [citation] is a measure of the legal sufficiency of the petition's well-pled allegations of a constitutional violation, *which if proven* at an evidentiary hearing, would entitle petitioner to relief." (Emphasis in original.) *People v. Domagala*, 2013 IL 113688, ¶ 35. The court reviews the petition's factual sufficiency as well as its legal sufficiency in light of the trial court record and applicable law. *People v. Alberts*, 383 Ill. App. 3d 374, 377 (2008). At a dismissal hearing, the court is prohibited from engaging in any

fact-finding (*People v. Coleman*, 183 Ill. 2d 366, 380-81 (1998)) and considers all well-pleaded facts not positively rebutted by the trial record as true (*Pendleton*, 223 Ill. 2d at 473). Thus, the dismissal of a postconviction petition at the second stage is warranted when the allegations in the petition, liberally construed in light of the trial record, fail to make a substantial showing of a constitutional violation. *Coleman*, 183 Ill. 2d at 382. This court reviews *de novo* a trial court's dismissal of a postconviction petition at the second stage. *Pendleton*, 223 Ill. 2d at 473.

¶ 37    In this case, the defendant alleged in his petition that he was denied the effective assistance of trial counsel, postsentencing counsel, and appellate counsel. A defendant is entitled to the effective assistance of counsel. U.S. Const., amends. VI, XIV; Ill. Const. 1970, art. I, § 8. To prevail on a claim of ineffective assistance of counsel, a defendant must prove both prongs of the standard set forth in *Strickland v. Washington*, 466 U.S. 668, 691 (1984), *i.e.*, that defense counsel's performance fell below an objective standard of reasonableness, and that defendant was prejudiced by counsel's deficient performance. *People v. Manning*, 241 Ill. 2d 319, 326 (2011). There is a strong presumption that the action or inaction by a trial attorney was the product of sound trial strategy and not incompetence. *Coleman*, 183 Ill. 2d at 397. Prejudice is established when there is a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different. *People v. Graham*, 206 Ill. 2d 465, 476 (2003). A defendant must satisfy both prongs of the *Strickland* standard, and the failure to satisfy either prong precludes a finding of ineffective assistance of counsel. *People v. Patterson*, 192 Ill. 2d 93, 107 (2000). Thus, where defendant's ineffective assistance of counsel claim can be disposed of because defendant suffered no prejudice, we need not determine whether counsel's performance was deficient. *Id.*

13

¶ 38    The two-pronged *Strickland* test also applies to allegations of ineffective assistance of appellate counsel. *People v. Caballero*, 126 Ill. 2d 248, 269-70 (1989). A defendant who claims that appellate counsel was ineffective for failing to raise an issue on appeal must allege facts showing such failure was objectively unreasonable and that counsel's decision prejudiced the defendant. *People v. Enis*, 194 Ill. 2d 361, 377 (2000). Unless the underlying issue has merit, a defendant cannot be considered to have suffered prejudice from appellate counsel's failure to brief that issue. *People v. Childress*, 191 Ill. 2d 168, 175 (2000).

¶ 39    The defendant argues that trial counsel erred when he failed to take advantage of a large amount of mitigating evidence, including live witnesses ready to testify at the defendant's sentencing, the defendant's acquisition of his GED, and the results of an actuarial risk assessment instrument, the Static-99, indicating a low rate of recidivism. The defendant argues that there was a reasonable probability that the sentence would have been different if this mitigating evidence would have been presented to the court.

¶ 40    The State counters that the alleged mitigation witnesses, many of whom were related to the defendant, would have provided testimony that was not only largely cumulative, but fell within the "good guy, hard worker" category of testimony that the circuit court noted would be unpersuasive. The State further argues that the testimony of several of these witnesses, indicating that the defendant was very protective of his stepchildren, when he had been sexually assaulting one of them for years, would have revealed him to be a manipulative predator and would have been harmful to trial counsel's argument for leniency. The State asserts that the PSI inaccuracies were minor and that although the Static-99 results were not highlighted at sentencing, neither were the Level of Service-Inventory-Revised (LSI-R) results, which is another actuarial risk

14

assessment instrument attached to the PSI, which placed the defendant in the "high-medium" risk category.

¶ 41 A defendant is entitled to reasonable, not perfect, representation. *People v. Fuller*, 205 Ill. 2d 308, 330 (2002). Decisions concerning which witnesses to call and what evidence to present on defendant's behalf ultimately rest with trial counsel. *People v. Munson*, 206 Ill. 2d 104, 139-40 (2002). These types of decisions are considered matters of trial strategy and are generally immune from ineffective assistance of counsel claims. *People v. Smith*, 195 Ill. 2d 179, 188 (2000). "In recognition of the variety of factors that go into any determination of trial strategy, *** claims of ineffective assistance of counsel must be judged on a circumstance-specific basis, viewed not in hindsight, but from the time of counsel's conduct, and with great deference accorded counsel's decisions on review." *Fuller*, 205 Ill. 2d at 330-31. Thus, "[m]istakes in trial strategy or tactics or in judgment do not of themselves render the representation incompetent." (Internal quotation marks omitted.) *People v. Hillenbrand*, 121 Ill. 2d 537, 548 (1988).

¶ 42 "Courts are highly deferential in reviewing trial counsel's strategic decisions regarding the presentation of mitigation evidence." *People v. Howery*, 178 Ill. 2d 1, 55-56 (1997). However, "counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary." *Strickland*, 466 U.S. at 691. Nevertheless, "[t]he failure to offer mitigation evidence does not in and of itself establish deficient performance." *Howery*, 178 Ill. 2d at 55.

¶ 43 At the postsentencing motion hearing, the defendant stated that he had told trial counsel that more than 20 people in the courtroom were there to testify on his behalf but that trial counsel had told him that no one wanted to testify. The defendant notes that trial counsel presented only one witness in mitigation, to lay the foundation for the admissibility of a single photograph.

15

However, the circuit court indicated that good-character testimony by friends and relatives, as would have been submitted according to the affidavits attached to the defendant's postconviction petition, held little value in its sentencing decision. See *People v. Jackson*, 149 Ill. 2d 540, 554 (1992) (testimony of parents at sentencing would most likely be viewed as biased). Moreover, we agree with the State that the witnesses' proposed testimony that the defendant had treated his stepchildren well and had been protective of them, when he had been sexually assaulting one of them for years, could reasonably be viewed as harmful to trial counsel's argument for leniency.

¶ 44 Likewise, although trial counsel failed to capitalize on the Static-99 test, which revealed a low-moderate risk of recidivism, the PSI also attached LSI-R results, prepared by D.A. Andrews and James Bona, Ph.D.s with Multi-Health Systems, Inc., which disclosed an overall recidivism risk score of 27, placing the defendant in the "high-medium" category. Both instruments assessed risk for potential recidivism. See *People v. Kallal*, 2019 IL App (4th) 180099, ¶ 15. As noted by the State, it was within trial counsel's discretion to avoid accentuating these test results altogether.

¶ 45 Moreover, after reviewing the record, we find that the defendant has failed to show that he was prejudiced by trial counsel's alleged failings. "In order to show prejudice, a defendant must demonstrate 'a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.' " *People v. Valdez*, 2016 IL 119860, ¶ 29 (quoting *Strickland*, 466 U.S. at 694). Here, none of the actuarial results attached to the PSI were mentioned by the parties or the court. Likewise, an alleged error in the PSI involved a representative from the Regional Office of Education indicating that there was no record of the defendant receiving a GED, when the defendant set forth that he had, in fact, received his GED. This alleged error was minor, however, and the circuit court did not mention the lack of GED

16

achievement during sentencing. Compare *People v. Billups*, 2016 IL App (1st) 134006, ¶ 16 (there was a reasonable probability that the court would have imposed a lesser sentence if defense counsel had alerted the court to the unconstitutionality of the statutes the defendant violated for two of three gun convictions, on which the judge relied heavily to impose sentence). Instead, the circuit court focused on defendant's violation of bond conditions, his refusal to accept responsibility, his criminal history, and his supervisory position as stepfather of the victim. We cannot conclude that there was a reasonable probability that, but for counsel's failure to capitalize on this evidence, the result of sentencing would have been different.

¶ 46    The defendant argues that trial counsel failed to object to the admission of Jane's video-recorded statements, as made at the Child Advocacy Center in Ohio, where she was first interviewed, and to Detective Charlie Becherer of Clinton County. The defendant argues that the admission of these videos was improper because no foundation was laid for their admission and neither Jane nor the maker of the videos testified about the accuracy and reliability of the videos. The defendant argues that trial counsel had no valid, strategic reason for not objecting to the inadmissible evidence at sentencing. The defendant further argues that because the circuit court mentioned the years of sexual misconduct revealed in the videos, it was impacted by the inadmissible contents of the videos and the defendant was prejudiced.

¶ 47    The State notes that trial counsel agreed, prior to the sentencing hearing, to the admission of the Child Advocacy Center and Detective Becherer interviews by way of stipulation and that trial counsel's decision to do so was made after consultation with defendant and his acquiescence, which the defendant confirmed on the record.

¶ 48    A decision whether to stipulate to the admission of evidence is one of trial strategy that is typically immune from a claim of ineffective assistance of counsel and violation of the

17

confrontation clause, particularly where, as here, the record shows that the defendant did not object to the stipulation. *People v. Clendenin*, 238 Ill. 2d 302, 324 (2010). As noted by the State, trial counsel, knowing that the evidentiary rules at sentencing were relaxed (*People v. Harris*, 375 Ill. App. 3d 398, 408 (2007)), that the State could satisfy the prerequisites for admission of the videos under section 115-10(b) of the Code of Criminal Procedure of 1963 (725 ILCS 5/115-10(b) (West 2018) (allowing for admission of out-of-court statement made by victim of sex offense)), and that the evidence was relevant for sentencing on the open plea, could have properly decided that challenging the State on foundation grounds would have been futile.

¶ 49    The defendant also argues that trial counsel was ineffective for failing to object to Detective Becherer's police report, which was attached to the PSI and from which the circuit court read at sentencing, because the police report was unreliable hearsay. The defendant argues that he was prejudiced by this evidence, considering that the circuit court spent a significant portion of the sentencing hearing reading the police report into the record.

¶ 50    The State counters that the police report at issue related to the crime to which the defendant pled guilty, and although hearsay, was admissible at sentencing. The State notes that trial counsel likely did not see any viable path toward challenging the reliability of the information Detective Becherer had collected in the police report, and Detective Becherer's testimony might have served to allow elaboration on information adverse to the defendant's position. The State further notes that the circuit court considered the police report as a consequence of the defendant's nonplea plea (*People v. Church*, 334 Ill. App. 3d 607, 614 (2002) (in an "*Alford* plea" a defendant pleads guilty yet continues to proclaim his innocence)), in that it referenced the report to reject the suggestion that this case was merely a he-said, she-said accusation.

¶ 51    The ordinary rules of evidence which govern at trial are relaxed during the sentencing hearing. *People v. Blanck*, 263 Ill. App. 3d 224, 234 (1994). In consideration of an appropriate sentence, the court may consider various sources and types of information and is allowed to search anywhere within reasonable bounds for other facts which may serve to aggravate or mitigate the offense. *People v. Varghese*, 391 Ill. App. 3d 866, 873 (2009). A sentencing court may receive a wide variety of types of evidence touching upon the defendant's general moral character and propensity to commit crimes. *Harris*, 375 Ill. App. 3d at 408-09.

¶ 52    Evidence showing the defendant's commission of other crimes or acts of misconduct is admissible even though the defendant was not prosecuted or convicted for such conduct. *People v. Edgeston*, 157 Ill. 2d 201, 246 (1993). Evidence of criminal activity "should be presented by witnesses who can be confronted and cross-examined, rather than by hearsay allegations in the presentence report." *Jackson*, 149 Ill. 2d at 548. However, the admission of hearsay evidence at sentencing is not necessarily error. *People v. Foster*, 119 Ill. 2d 69, 96 (1987); *Harris*, 375 Ill. App. 3d at 409. At sentencing, a "hearsay objection affects the weight rather than the admissibility of the evidence." *Harris*, 375 Ill. App. 3d at 409. The overarching concern is that the evidence is reliable and relevant, as determined by the trial court within its sound discretion. *Id.*; see also *Foster*, 119 Ill. 2d at 96.

¶ 53    Hearsay evidence may be found to be relevant, reliable, and admissible when it is corroborated by other evidence. *Varghese*, 391 Ill. App. 3d at 873. "Information contained in a presentence report must necessarily consist in part of hearsay and other normally inadmissible evidence." *Blanck*, 263 Ill. App. 3d at 235. "A presentence report is generally a reliable source for the purpose of inquiring into a defendant's criminal history." *Id.*; see also *People v. Williams*, 149 Ill. 2d 467, 491 (1992).

19

¶ 54 At sentencing, the circuit court read from the police report, which included statements by Jane's three brothers that supported Jane's claims. The circuit court stated that it read these statements to counter the implication that "somehow this is [Jane's] word against [the defendant's] word," considering that the defendant denied in the PSI report that he had committed any offenses against Jane. The circuit court did not state that it was considering the statements as factors in aggravation. The reports were reliable and relevant evidence of the underlying offense, to which the defendant pled guilty, and the defendant does not raise any reasons why the evidence was unreliable. See *People v. Jackson*, 182 Ill. 2d 30, 84 (1998).

¶ 55 Moreover, even where counsel's performance is deficient, the defendant must still demonstrate prejudice to sustain a claim of ineffective assistance of counsel. *People v. Coleman*, 168 Ill. 2d 509, 536 (1995). Here, the defendant has failed to make a substantial showing that he was prejudiced by counsel's performance, even if deficient. Because the defendant is unable to show that there is a reasonable probability that, but for counsel's asserted unprofessional errors, the result of the proceeding would have been different, his ineffective assistance of counsel claims fail. Because we conclude that trial counsel was not ineffective for the alleged failings at sentencing, we conclude that postsentencing counsel and appellate counsel cannot be deemed ineffective for failing to raise the issues or argue that trial counsel was ineffective. See *People v. Simms*, 192 Ill. 2d 348, 364 (2000).

¶ 56                                          CONCLUSION

¶ 57 For the foregoing reasons, the circuit court's judgment granting the State's motion to dismiss the defendant's petition for postconviction relief is affirmed.

¶ 58 Affirmed.